UNITED STATES, Appellee,

v.

Thomas H. CROOM, Jr., Sergeant U.S. Army, Appellant.

No. 54828.

CM 447007.

U.S. Court of Military Appeals.

Aug. 31, 1987.

For Appellant: *Colonel Brooks B. La Grua, Major Dale K. Marvin, Major Eric*

*T. Franzen, Captain Pamela G. Montgomery* (on brief); *Lieutenant Colonel Paul J. Luedtke* and *Captain Craig E. Teller.*

For Appellee: *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Thomas E. Booth, Captain Amaury R. Colon* (on brief); *Colonel James Kucera* and *Major Byron J. Braun.*

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was charged at a general court-martial with resisting apprehension, and assault with intent to commit rape and murder, in violation of Articles 95 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 895 and 934, respectively. After mixed pleas, he was convicted of resisting apprehension and assault with a dangerous weapon and was sentenced to confinement for 2 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed. 21 M.J. 845 (A.C.M.R. 1986).

This appeal focuses on an accused's right under Mil.R.Evid. 615, Manual for Courts-Martial, United States, 1984, to exclude a psychiatrist, who is an anticipated government rebuttal witness, from the courtroom during the testimony of a defense psychiatrist. 22 M.J. 367. The military judge declined to exclude either expert witness during any part of the trial, and we sustain this exercise of his discretion.

I

The primary issue at trial was appellant's mental responsibility for his acts. Ultimately, the defense offered the testimony of Dr. Robert Rollins, a forensic psychiatrist, on this issue, and the Government countered in rebuttal[1] with testimony from

---

1. In some respects, though, the testimony of Dr. Anderson was helpful to the defense. For instance, on cross-examination Dr. Anderson opined that appellant probably suffered from some diminished capacity to conform his con-

duct to the law and, further, that appellant likely did not intend to rape or murder his victim. Undoubtedly due in part to this testimony, the members returned a finding of guilty of aggra-

Dr. Daniel Anderson, a psychiatrist and an Army colonel.

Before either testified, however, trial counsel made this motion:

I would only request that, during the testimony of their expert ... well, that the experts be mutually allowed to sit in on each other's testimony so that they might be more fully apprised of the testimony.

Trial counsel offered this rationale for his request:

I believe that my lack of understanding of medical terminology would be greatly assisted by this and, at the same time, the defense psychiatrist should be allowed to sit in to listen to the conclusions of the government psychiatrist.

Defense counsel objected in these terms:

Well, we would just, at this point, interpose an objection to that, Your Honor. We would contend that, under the circumstances of this case, neither psychiatrist should sit in for the testimony of the other. Our psychiatrist is going to testify first and that gives the government an unfair advantage and it sort of goes at the heart of our case. Our case is based upon two separate evaluations by two different psychiatrists and based upon two different data bases, if you will. To allow his psychiatrist to sit in during the testimony of our psychiatrist would probably influence him in his testimony. If the purpose, as the government has stated, is to allow a psychiatrist to sit in and help him and explain terms to him and help him understand testimony, we would have no objection to some other psychiatrist sitting in for that purpose. But it seems here that his psychiatrist is sitting in to mold his testimony, after that of our psychiatrist.

Thereafter, the military judge granted the prosecution's motion:

I will allow either psychiatrist to sit in on the other's testimony. For that matter, they can sit in on anybody's testimony, if they feel that it would be helpful in arriving at an opinion. If they want to listen to the victim's testimony, feel free to have them in here.

Consistent with this ruling, Dr. Anderson was permitted to remain in the courtroom during the testimony not only of Dr. Rollins but also of appellant's wife, notwithstanding a renewed defense objection in the latter instance.

## II

Trial counsel offered two grounds for his request that Dr. Anderson remain in the courtroom: First, Dr. Anderson's opinions would be based, in part, on the testimony of Dr. Rollins, *see* Mil.R.Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those *perceived by* or made known to *the expert, at or before the hearing."* (Emphasis added.)); second, Dr. Anderson's presence was "essential to the [prosecutor's] presentation of" the case because the latter needed the psychiatrist in order to understand properly the technical testimony of Dr. Rollins, *see* Mil.R.Evid. 615. Because the military judge apparently limited his ruling to the first basis, we shall similarly limit our discussion here.[2]

Mil.R.Evid. 703 is broadly written with regard to the permissible bases for expert-opinion testimony. For instance, the facts or data underlying such an opinion need not, themselves, even be admissible in evidence, so long as they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." The rule is similarly broad with respect to how the expert may come upon such facts or data: They may be "perceived by or made known to the expert, at or before the hearing." Clearly this language permits the witness

---

vated assault in lieu of the charged assault with intent to commit rape and murder.

**2.** The role of an expert witness in the management of the case under Fed.R.Evid. 615 is dis-

cussed in *Morvant v. Construction Aggregates Corp.,* 570 F.2d 626 (6th Cir. 1978), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1979).

himself to watch the trial and thereby gain the facts and data necessary to form his expert opinion. S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* (hereafter Saltzburg) 595 (2d ed. 1986).

Possibly, the expert's acquisition of data in this way collides with the apparent intent behind Mil.R.Evid. 615 which, with three specific exceptions, prescribes that, at the request of either party, a "military judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses." It has been observed that "[t]he purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion. *Taylor v. United States*, 388 F.2d 786 (9th Cir. 1967); *United States v. Leggett*, 326 F.2d 613 (4th Cir.), *cert. denied*, 377 U.S. 955, 84 S.Ct. 1633, 12 L.Ed.2d 499 (1964)." *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373 (5th Cir. 1981). *Accord* Saltzburg, *supra* at 577.

Although Mil.R.Evid. 615 is written as directory and "has been interpreted as elevating sequestration to a right," *id.*, its interplay with other rules has led to certain common-sense deviations from its strict application, even while the rule's purpose is safeguarded. For instance, the court in *In re United States*, 584 F.2d 666 (5th Cir. 1978), held that the prosecution was entitled under Fed.R.Evid. 615(2) to have a government agent, who would also be a prosecution expert witness, serve as a designated representative of the United States and, thereby, not be excluded from the trial; however, to comply with the purpose of the sequestration rule, the court also suggested that the prosecution could be required to call the expert "at the beginning of its case" in order to limit the possibility of his testimony being unduly influenced by other witnesses. Furthermore, in deciding whether an expert may remain in the courtroom because he is "a person whose presence is shown by a party to be essential to the presentation of the party's case," *see* Mil.R.Evid. 615(3), the military judge should balance "the party's need for

the" witness' presence "against the public policy considerations" behind the general rule of sequestration. Saltzburg, *supra* at 578.

We conclude that Mil.R.Evid. 703 presents yet another instance of the practical need for some flexibility in applying the general rule of witness exclusion under Mil.R.Evid. 615. Although "rule 703 does not furnish an automatic basis for exempting an expert from sequestration under rule 615," *Miller v. Universal City Studios, Inc.*, 650 F.2d at 1374, its purpose and rationale do provide a judge with the logical discretion to permit some accommodation of the otherwise strict mandate of witness exclusion. *See generally Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 629 (6th Cir. 1978) ("We perceive little, if any, reason for sequestering a witness who is to testify in an expert capacity only and not to the facts of the case."), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 44; 54 L.Ed.2d 94 (1979).

If the expert witness will base his opinion on much or all of the data which is reflected in other evidence presented at the trial, it makes little sense to require automatically that those facts and data be presented to him by means of a lengthy and complex hypothetical question, instead of through his own sensory perceptions during the trial. This judicial expediency must be balanced against the possibility, in a given case, that the expert's opinion might somehow be unduly influenced by hearing the testimony first-hand, which is the concern of Mil.R.Evid. 615. This balance is best left to the military judge, whose ruling will, of course, be subject to review for abuse of discretion.

We see no reason in this case to disturb the military judge's ruling that the expert witness on each side might sit in on the testimony of all other witnesses. Trial counsel represented that such a procedure would help his expert witness by making sure he was "more fully apprised of the testimony" upon which he would base an

opinion; and he candidly recognized a similar motivation for the presence of the defense expert witness. Absent a showing either at trial or on appeal that this procedure would, or did, unduly influence Dr. Anderson's testimony, granting trial counsel's request was reasonable and fully in compliance with the Military Rules of Evidence. *See generally Morvant v. Construction Aggregates Corp., supra.*

### III

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.