# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM S32734 (f rev)**

_____

**UNITED STATES**
*Appellee*

**v.**

**Hector D. MANZANO TARIN**
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 24 September 2024

_____

*Military Judge*: Charles G. Warren; Lance R. Smith (remand).

*Sentence*: Sentence adjudged 6 June 2022 by SpCM convened at Hill Air Force Base, Utah. Sentence entered by military judge on 5 July 2022: Bad-conduct discharge, confinement for 2 months, reduction to E-2, and a reprimand.

*For Appellant*: Major Samantha P. Golseth, USAF; Jacob P. Frankson (legal intern).[1]

*For Appellee*: Major Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, ANNEXSTAD, and BREEN, *Appellate Military Judges*.

Judge BREEN delivered the opinion of the court, in which Senior Judge RICHARDSON and Senior Judge ANNEXSTAD joined.

_____

---

[1] Jacob P. Frankson was a legal intern supervised at all times by an attorney admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

BREEN, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification of conspiracy to commit larceny and one specification of larceny in violation of Articles 81 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921. [2,3] The military judge sentenced Appellant to a bad-conduct discharge, confinement for three months, reduction to the grade of E-2, and a reprimand. Upon recommendation from the military judge and pursuant to the plea agreement, the convening authority suspended one month of confinement for a period of three months from the entry of judgment contingent upon Appellant's repayment of $3,333.00 to the Army and Air Force Exchange Service (AAFES), at which time the suspended confinement would be remitted without further action unless the suspension was sooner vacated. [4]

Appellant raised three issues on appeal which we have reworded and reordered: (1) whether the record of trial is incomplete in that the stipulation of fact in the record is not what was admitted during the court-martial; (2) whether the military judge erred by admitting evidence that Appellant possessed a mortgage as rebuttal to his unsworn statement about his motive; and (3) whether his sentence is inappropriately severe. [5]

We previously reviewed Appellant's first issue and remanded the case to the Chief Trial Judge, Air Force Trial Judiciary, for correction of the record to ensure the record of trial contains the complete stipulation of fact admitted as

_____

[2] Unless noted otherwise, all references to the UCMJ, the Military Rules of Evidence (Mil. R. Evid.), and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Pursuant to the plea agreement, the convening authority withdrew and dismissed with prejudice one specification of soliciting another to commit larceny in violation of Article 82, UCMJ, 10 U.S.C. § 882.

[4] The Statement of Trial Results indicates the sentence to confinement is "3 months" with the military judge recommending one month be conditionally suspended. The entry of judgment indicates the convening authority accepted the recommendation, and conditionally suspended one month of confinement. The entry of judgment indicates "total confinement" is "2 months." The parties have not raised this disparity as an issue. We find any error in the entry of judgment indicating "total confinement" is "2 months" benefits Appellant and does not disturb the judgment.

[5] Appellant raises the third issue regarding the severity of his sentence pursuant to *United States v. Grostefon*, 12 M.J. 432 (C.M.A. 1982).

Prosecution Exhibit 1. *See United States v. Manzano Tarin*, No. ACM S32734, 2023 CCA LEXIS 291, at \*3–4 (A.F. Ct. Crim. App. 27 Jun. 2023) (order). We deferred addressing Appellant's remaining allegations until the record was returned to this court for completion of our Article 66(d), UCMJ, 10 U.S.C. § 866(d), review. *Id.* at \*4. The record of trial was corrected by removing from the record of trial the version of Prosecution Exhibit 1 contained therein and replacing it with the version that was admitted at trial. The record of trial has been returned to us for review. Appellant maintains error, which we analyze below.

We find no error materially prejudicial to Appellant's substantial rights and affirm the findings and the sentence.

## I. BACKGROUND

Between 2 November and 31 December 2021, Appellant's brother, EMT, worked as a cashier at the AAFES store on Hill Air Force Base (AFB), Utah. During this time, Appellant, his brother, and Appellant's wife agreed to a scheme to steal from AAFES. On multiple occasions throughout November and December, Appellant or his wife would approach EMT's register with merchandise. EMT would scan only a portion of these items and then put all the merchandise into AAFES purchase bags. Later, either Appellant or his wife would go back to the store to return the unscanned items, without a receipt. EMT would process the returns using fake customer names and then issue an AAFES gift card in an amount equal to the value of the returned, stolen items. Appellant or his wife would then use the AAFES gift cards to purchase third-party debit cards. Appellant and his wife participated in this scheme approximately 39 times and improperly received approximately $10,100.00 worth of debit cards. Appellant alone improperly received approximately $5,200.00 worth of these third-party debit cards during the scheme.

The purchase of third-party debit cards with AAFES gift cards violated AAFES policy. The AAFES Loss Prevention Manager and security personnel learned about the improper purchases and started an investigation. The Loss Prevention Manager later observed Appellant approaching EMT's cashier station, and a review of security camera footage revealed multiple transactions where EMT executed the scheme to convert unscanned items into third-party debit cards. Based upon this evidence, the Loss Prevention Manager interviewed EMT. EMT confessed to the scheme to convert stolen AAFES merchandise into third-party debit cards, and he named Appellant and his sister-in-law as co-conspirators. During a subsequent interview with security forces, Appellant also confessed to his participation in the scheme.

## II. DISCUSSION

### A. Incomplete Record of Trial

#### 1. Additional Background

During the guilty plea inquiry, assistant trial counsel provided a stipulation of fact, identified as Prosecution Exhibit 1. The exhibit contained six primary pages and four attachments. The military judge then asked trial counsel to detail the number of pages for each attachment to make "crystal clear that all the attachments are what was included in the original and also in the copy that the accused saw and signed." Assistant trial counsel then provided the following description:

> The stipulation of fact has four attachments, the first attachment[ ] being the AAFES return policy, and it's two pages. The second attachment being [EMT's] AAFES statement dated 15 December 2021. *That is 13 pages*. The third attachment, Senior Airman Manzano Tarin's answers to [security forces], dated 24 January 2022. That is one page. And the fourth attachment [is] the AAFES receipts, *25 pages*.

(Emphasis added). The number of pages in the corrected version of Prosecution Exhibit 1 does not match the number of pages described by assistant trial counsel. Attachment 2 of Prosecution Exhibit 1 contains 12 pages, which is one page fewer than the number articulated on the record and Attachment 4 of Prosecution 1 contains 27 pages, which is two more than the number articulated on the record.

#### 2. Law

Whether a record of trial is complete is a question of law, which appellate courts review de novo. *United States v. Davenport*, 743 M.J. 373, 376 (C.A.A.F. 2014). "A substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the Government must rebut." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000) (citations omitted). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Id.* "We . . . approach the question of what constitutes a substantial omission on a case-by-case basis." *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999) (citation omitted).

#### 3. Analysis

Appellant argues that the stipulation of fact (Prosecution Exhibit 1), even in the corrected record, is not the one that was admitted at trial. Specifically, Appellant notes the difference between the number of pages contained in Prosecution Exhibit 1 and the number of pages for this exhibit as described during

Appellant's court-martial. We are not convinced there is an omission in the record.

Attachment 2 of Prosecution Exhibit 1 is an AAFES form with numbering in the bottom right corner of the form. The six forms used (pages one through five and page twelve), along with six additional continuation pages, are sequentially numbered as pages "of 12." Moreover, a review of the "interview" on these twelve pages does not reveal any breaks or inconsistencies that would indicate there is a missing page. Attachment 4 of Prosecution Exhibit 1 includes "transaction details" and AAFES receipts that match transaction numbers and amounts described by EMT in Attachment 2 of Prosecution Exhibit 1.

Based on these factors, this court is convinced any page discrepancy was based on assistant trial counsel's confusion, and he articulated the wrong number of pages to the military judge. With no evidence of any omission in the record, substantial or insubstantial, Appellant is not entitled to relief on this issue.

## B. Rebuttal to Unsworn Statement

Appellant contends the military judge erred in admitting a deed record as rebuttal evidence to Appellant's unsworn statement because the deed record had "low probative value," and Appellant "was prejudiced as the question of his own benefit was 'pivotal' to the court's sentence determination." Appellant further argues that he would have received "less punishment" if the military judge refused to consider the deed record. Therefore, Appellant feels he is entitled to "meaningful relief" in the form of "setting aside his bad-conduct discharge."

### 1. Additional Background

As part of Appellant's sentencing case, Appellant offered seven exhibits for admission, which included an index detailing the defense exhibits, an unsworn statement, two character letters, family pictures, a document showing a checking account balance, and copies of Appellant's coins, awards, and degrees. Trial counsel objected to admission of these exhibits on the grounds of "authentication, foundation and hearsay." In response, trial defense counsel requested "the rules be relaxed" under Rule for Courts-Martial (R.C.M.) 1001(d)(3). The court relaxed the rules and admitted the exhibits but noted the rules "will be similarly relaxed for any prosecution rebuttal case." The unsworn statement included the following language:

> While I was serving my 3 years in Okinawa, my brother [EMT] was having issues with drug addiction. I was always the one who made sure he was out of trouble. During my time in Japan, he got kicked out of my father's house in Bellflower, [California,] and got deeper into addiction. When I got station[ed] in Utah, I

wanted to help him and brought him to Hill AFB to live and work at [AAFES]. It seems he was never really able to leave his addiction and resourced [sic] to alcohol. He was in deep debt, [and] I did not know how to help him. He had issues with debt and with addiction. He told me about the ways I could get money from his job. In a lapse of judgement and love for my brother, I gave in thinking that I would help him and no one would get hurt by this temporal solution to his problems.

In response to the unsworn statement, the Government sought to admit a six-page deed record from an online legal research tool as part of their rebuttal sentencing case. Trial counsel argued the deed record rebutted Appellant's statements indicating his motivation was to help his brother who was in debt. Additionally, trial counsel pointed out the fact that an attachment to the stipulation of fact contained a statement from EMT indicating that Appellant "was using the gift cards to help pay off a mortgage."

Trial defense counsel objected to the admission of this rebuttal evidence. Trial defense counsel argued (1) the deed record was related to the purchase of a house that occurred before the charged timeframe; (2) EMT's statement attached to the stipulation of fact also contained contradictory statements about motive because EMT also discussed how much Appellant was helping him; and (3) the evidence had "little to no weight" because there were no payment records linking the debit cards to mortgage payments.

The military judge overruled trial defense counsel's objection. First, the military judge determined the researching tool used by trial counsel was a "commonly recognized legal research tool utilized by all members of the [United States Air Force Judge Advocate General's Corps]," found a record derived from the research tool that had a "sufficient indicia of reliability" for authenticity, and noted that the rules regarding authenticity and reliability were "relaxed." In terms of further grounds for admission, the military judge found,

> Insofar as substantively whether this document rebuts the accused's alleged motive, both sides are free to present to the court their theories as to how this does or doesn't support. The court finds at this point, for purposes of preliminary determination as to whether it qualifies as rebuttal evidence, that is does qualify as rebuttal evidence. The particular fact at issue here is what was the accused's motives for engaging in the larceny scheme with his brother. The accused has said that his motive was to assist his brother. The [G]overnment is asserting that the motive was for payment of the mortgage.
>
> The stipulation of fact, agreed to by both parties, recites facts that could lead to two different interpretations here. One, in the

statement above, when asked what the accused and his wife were doing with the cards, the answer was, quote, "I guess they wanted to pay off the mortgage on their home and that they used the income for the house and the gift cards to buy groceries, gas, and stuff. I think that is what they did[.] I don't know. I think you can pay off other stuff with them like car insurance or something," close quote.

That, taken in conjunction with the mortgage, could lead to an inference of a reasonable finder of fact that the entrance [into the theft scheme] was perhaps dual, to assist the accused and his brother. The court finds that those are matters in aggravation to take into account in this case.

The court has also done an [Mil. R. Evid.] 403 analysis, and insofar as the court is sitting judge alone, it has very limited concerns about the court's ability to consider this for the limited purpose of whether it rebuts the accused's assertion that his primary motivator was to assist his brother and not himself.

Defense counsel's objection as to Prosecution Exhibit 5 for Identification is overruled. Prosecution Exhibit 5 for Identification is admitted into evidence as Prosecution Exhibit 5[, the deed record].

As part of their sentencing argument, the Government argued an appropriate sentence for Appellant's convictions would include a bad-conduct discharge, reduction in rank to E-1, and three months of confinement. In support of the bad-conduct discharge, assistant trial counsel cited the taking of unscanned items, the exchange for AAFES gift cards, the use of fake names, the procurement of third-party debit cards, the theft occurring on "14 separate days," with multiple thefts on the same days, the coordination required to accomplish the scheme, and the loss of Air Force credibility based on misconduct committed by an Air Force member victimizing "a mission partner" as warranting this punishment. In support of the three months of confinement, assistant trial counsel referenced EMT's statement about Appellant possibly buying other items to free up his income to pay for the mortgage, among other things.

The defense sentencing argument focused on Appellant's actions in "tak[ing] responsibility from the very beginning" to include his confession to security forces. Moreover, the motive for Appellant's participation was born out of a "moment of weakness" based on Appellant's "main purpose in life from of the age of seven" to take care of his brother. Finally, trial defense counsel concluded Appellant was "not a hardened criminal," but someone with "enormous rehabilitation potential" who did not require specific deterrence to prevent him from committing future misconduct.

Prior to the pronouncement of sentence, the military judge articulated his rationale for arriving at a sentence. The military judge determined the "pivotal" facts impacting sentencing were "recurrent misconduct," termination of the scheme after apprehension rather than voluntary abandonment, Appellant's motivation to include use of the proceeds for his own benefit as detailed in his brother's statement to AAFES, and Appellant's rehabilitation potential. The military judge further articulated he did not "doubt" Appellant's remorse or rehabilitation potential, but Appellant was someone who, based on his age and education, "knew better." The military judge did not reference the deed record as part of his sentencing analysis.

### 2. Law

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

> A military judge abuses his or her discretion when: (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence of record; (2) the military judge uses incorrect legal principles; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge fails to consider important facts.

*United States v. Rudometkin*, 82 M.J. 396, 401 (C.A.A.F. 2022) (citations omitted).

The Government is permitted to rebut "matter presented by the defense," R.C.M. 1001(e), including "any statement of fact" in an accused's unsworn statement. R.C.M. 1001(d)(2)(C), 1001(e). "[T]he legal function of rebuttal evidence . . . [is] to 'explain, repel, counteract or disprove the evidence introduced by the opposing party.'" *United States v. Saferite*, 59 M.J. 270, 274 (C.A.A.F. 2004) (quoting *United States v. Banks*, 36 M.J. 150, 166 (C.M.A. 1992)). "The scope of rebuttal is defined by evidence introduced by the other party." *Banks*, 36 M.J. at 166 (citations omitted).

"Rebuttal evidence, like all other evidence, may be excluded pursuant to [Mil. R. Evid.] 403 if its probative value is substantially outweighed by the danger of unfair prejudice." *Saferite*, 59 M.J. at 274 (citing *United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001)). "Military judges have wide latitude in controlling the presentation of rebuttal evidence." *United States v. Gittens*, 36 M.J. 594, 598 (A.F.C.M.R. 1992) (citation omitted). "Where a military judge

properly conducts the balancing test under [Mil. R. Evid.] 403, we will not over-turn his decision unless there is a clear abuse of discretion." *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998) (citation omitted).

Whether an error is harmless is a question of law we review de novo. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017) (citation omitted). "When there is error in the admission of sentencing evidence, the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *Barker*, 77 M.J. at 384 (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). We consider four factors when determining whether an error had a sub-stantial influence on the sentence: "(1) the strength of the Government's case; (2) the strength of the [D]efense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (citation omitted).

### 3. Analysis

We do not find that the military judge abused his discretion in concluding the deed record was proper rebuttal evidence to Appellant's unsworn state-ment. Appellant provided his unsworn statement *after* admission of Prosecu-tion Exhibit 1, which contained EMT's assertion that Appellant's motivation may have been to use proceeds from the thefts to free up income for mortgage payments, among other things. The unsworn statement identified one motiva-tion—helping his brother—with no mention of any other motive. The deed of record countered Appellant's stated motive by showing that Appellant had a very different rationale for participating in the thefts. This evidence gave the military judge a better foundation for weighing and evaluating the different motivators presented by the competing assertions. Therefore, the evidence con-tained sufficient probative value to warrant consideration by the military judge.

Additionally, when the military judge conducted a proper Mil. R. Evid. 403 balancing test on the record, as in this case, we will not overturn his decision unless we find a clear abuse of discretion. *Ruppel*, 49 M.J. at 251. We do not find a clear abuse of discretion here, because the military judge could reason-ably conclude the probative value of the evidence was not substantially out-weighed by the danger of unfair prejudice or being misleading or a waste of time.[6] *See* Mil. R. Evid. 403. As articulated in his ruling, the military judge found that the risk of unfair prejudice was low because he could assure that the evidence would be used for the "limited purpose of whether it rebuts the [Appellant]'s assertion that the primary motivator was to assist his brother

---

[6] At trial, Appellant did not identify the nature of any "unfair prejudice" resulting from the admission of the deed record. On appeal, Appellant argued that he would have received less punishment if the military judge refused to admit the deed record.

and not himself." We do not find the military judge's analysis or conclusions to be arbitrary, fanciful, clearly unreasonable, or clearly erroneous.

Finally, assuming *arguendo* the military judge erred by admitting the deed record, we find the error had no substantial influence on the sentence. *See Barker*, 77 M.J. at 384. We note Appellant was tried by a military judge rather than by court members. As part of his sentencing rationale, the military judge detailed several factors impacting his decision, but the deed of record or mortgage payments were not specifically among them. Furthermore, the suggestion of a second motive was already in evidence; in that sense, the deed record did not offer anything new. Accordingly, we are convinced the military judge could put the deed record into its proper context without succumbing to the dangers of unfair prejudice. After considering the relative strength of the government and defense sentencing cases, and especially the materiality of the deed record in relation to Appellant's offenses, we are convinced that the deed record was not pivotal to Appellant's sentence and any error in admitting this evidence had no substantial influence on the sentence.

## C. Inappropriately Severe Sentence

### 1. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We may affirm only as much of the sentence we find correct in law and fact. Article 66(d), UCMJ. In review of judge-alone sentencing, we "must consider the appropriateness of each segment of a segmented sentence and the appropriateness of the sentence as a whole." *United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although Courts of Criminal Appeal are empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

### 2. Analysis

Appellant contends that his sentence is inappropriately severe "considering his acceptance of responsibility and remorse, his strong rehabilitative potential, and the nature of the offenses." Therefore, he requests this court set aside his bad-conduct discharge. We are not persuaded Appellant's sentence, including a bad-conduct discharge, is inappropriately severe.

As detailed in Appellant's guilty plea and the evidence admitted at trial, Appellant's crimes involved his participation in a scheme, which involved the

theft of approximately $10,100.00 of third-party debit cards from AAFES across approximately 39 different transactions. Having considered the nature and seriousness of Appellant's misconduct, and matters contained in the entire court-martial record, including his record of service, all matters submitted in mitigation, and his written and verbal unsworn statements, we conclude the adjudged bad-conduct discharge, in addition to the other sentence components, fairly and appropriately punishes Appellant for his misconduct. Therefore, the adjudged and entered sentence is not inappropriately severe.

## III. CONCLUSION

The findings are correct in law, and the sentence as entered is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Article 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court