### UNITED STATES

v.

### Roberto RODRIGUEZ–RIVERA, Personnelman Second Class (E–5), U.S. Navy.

### NMCCA 9900859.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 14 Dec. 1998.

Decided 10 Jan. 2005.

---

Lt Brian Mizer, JAGC, USNR, Appellate Defense Counsel.

Lt Marcus N. Fulton, JAGC, USN, Appellate Defense Counsel.

Lt Christopher Burris, JAGC, USNR, Appellate Government Counsel.

Maj Kevin Harris, USMC, Appellate Government Counsel.

Before CARVER, Senior Judge, RITTER, Senior Judge, and WAGNER, Appellate Military Judge.

RITTER, Senior Judge:

In a hotly contested case, a general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of making false official statements, two specifications of sodomy with a child under the age of 12 years by force and without consent, three specifications of taking indecent liberties and one specification of committing indecent acts with a child under the age of 16 years, in violation of Articles 107, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 925, and 934. The appellant was sentenced to a dishonorable discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction to pay grade E-1. The convening authority approved the sentence as adjudged.

We have carefully considered the record of trial, the appellant's six assignments of error, the Government's response, and the appellant's reply. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Prosecutorial Misconduct

The appellant contends that the trial counsel committed prosecutorial misconduct by: (1) violating the military judge's ruling regarding witness sequestration; (2) improperly coaching the six-year-old victim during a recess taken in the middle of her direct testimony on the merits; (3) allowing the victim's parents to improperly coach the victim during the same recess; and (4) failing to be candid with the military judge concerning the improper coaching of the victim. We disagree, and find no such misconduct.

The appellant was charged with committing sodomy, committing indecent acts, and taking indecent liberties with a five-year-old girl, JK, on divers occasions while he was baby-sitting her. At the time of trial, JK was six years old. Before presenting evidence on the merits, the trial counsel moved that the court employ "special procedures" to assist JK in giving her testimony. One of the procedures was to allow a "support person" to sit near JK as she testified, for moral support. The military judge ruled that the Government did not sufficiently establish the need for a support person to be present "in the near vicinity of the witness box," but added that the Government was free to revisit the issue later, if necessary. Record at 155.

During the Government's direct examination of JK, she initially testified only to the appellant having "sucked [her] pee-pee" more than once and that he showed her a "sex movie" in his bedroom. *Id.* at 543–44. When asked if the appellant did other "bad things," she said no, despite prior statements made to her parents, a social worker, a Naval Criminal Investigative Service agent, two separate physicians, and at the Article 32, UCMJ, investigation, in which JK had described other types of misconduct committed by the appellant. When the military judge sustained the defense counsel's objection to further questioning, the trial counsel requested permission to impeach JK with her prior statements. The trial defense counsel then requested a recess to consider their response to the Government's request. The military judge gave no instructions to the witness or to counsel as to whether JK could discuss her testimony during the recess.

Before reconvening, a conference was held pursuant to RULE FOR COURTS-MARTIAL 802, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), in which the defense counsel expressed concern that both trial and assistant trial counsel met with JK during the recess. The assistant trial counsel made a proffer concerning that meeting, stating that he told JK that she had not done anything bad, and that she may or may not have to go back into the courtroom. He also told the military judge that JK's parents were present in the room and that he explained to them the issues concerning JK's testimony that were of concern to the court.

When the court reconvened, the military judge gave the defense an opportunity to voir dire JK concerning this meeting. JK stated that the assistant trial counsel asked her "some things about" the appellant and that he wanted her to "tell the rest of the story." Record at 570. The trial counsel also told JK not to be scared. After talking with JK's parents, both trial counsel left JK and her parents alone in the office. When asked what her parents told her, JK responded: "Because that wasn't the whole story and I didn't tell you everything[,]" and that she had to come back in and say more. *Id.* at 573.

After JK was voir dired on this issue, both trial and assistant trial counsel provided additional proffers. These proffers included the additional facts that, during the recess, JK began volunteering information concerning the allegations she had not yet testified to, and stated that she had not spoken up in court because she thought they were going to take a break and because she was nervous and scared.

### Applicable Law

■ Prosecutorial misconduct consists of "'action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon.'" *United States v. Thompkins,* 58 M.J. 43, 47 (C.A.A.F.2003)(quoting *United States v. Meek,* 44 M.J. 1, 5 (C.A.A.F.1996)). In evaluating an assertion of prosecutorial misconduct, we focus on the "overall effect of counsel's conduct on the trial, and not counsel's personal blameworthiness." *Thompkins,* 58 M.J. at 47 (citing *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)). If the prosecutor violated some legal norm, and if that violation impacted a substantial right of the appellant, we must still consider the record as a whole to determine whether the violation was harmless under all the circumstances of a particular case. *Meek,* 44 M.J. at 5.

MILITARY RULE OF EVIDENCE 615, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.) is the military's sequestration rule. It was derived from FEDERAL RULE OF EVIDENCE 615, and requires a military judge to exclude witnesses from the courtroom at the request of either the prosecution or the defense, subject to certain exceptions. It does not specifically address conduct outside the courtroom. "The purpose of the sequestration rule is to prevent witnesses from shaping their testimony to match another's and to discourage fabrication and collusion." *United States v. Miller,* 48 M.J. 49, 58 (C.A.A.F.1998)(citing *United States v. Croom,* 24 M.J. 373, 375 (C.M.A.1987)); *see Geders v. United States,* 425 U.S. 80, 87, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976).

There is a dearth of military case law to guide us in sequestration issues outside the parameters of MIL. R. EVID. 615; that is, outside the context of excluding potential witnesses from the courtroom. However, as the United States Supreme Court stated in *Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989):

> It is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is completed. *Such nondiscussion orders are a corollary of the broader rule that witnesses may be sequestered* to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will confine themselves to truthful statements based on their own recollections.

488 U.S. at 281–82, 109 S.Ct. 594 (emphasis added). Also, federal court precedents make clear that while FED.R.EVID. 615 regulates only the presence of witnesses in the courtroom, *United States v. Calderin–Rodriguez,* 244 F.3d 977, 984–85 (8th Cir.2001), its broader purpose of preventing witness collusion provides discretionary authority for judges to issue nondiscussion orders as they deem necessary to further the intent of the Rule. *See United States v. Sepulveda,* 15 F.3d 1161, 1175–76 (1st Cir.1993).

■ Sequestration of witnesses and sanctions for violation of a sequestration order are matters entrusted to the military judge's discretion. *See United States v. Roth,* 52 M.J. 187, 190 (C.A.A.F.1999). Violations of the sequestration rule have been generally treated in three ways: (1) citing violators for contempt or giving other admo-

nitions or reprimands; (2) allowing opposing counsel to cross-examine the witness as to the nature of the violation; and (3) for intentional violations, striking testimony already given or disallowing further testimony. *Id.* (citing *Holder v. United States,* 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010 (1893)). The standard of review for a military judge's rulings on sequestration issues is abuse of discretion. *Id.*

### Analysis

■ In his first of four specific contentions of prosecutorial misconduct, the appellant argues that the trial counsel intentionally violated the military judge's sequestration order by allowing JK's parents to discuss with JK the substance of her testimony during the recess. In fact, what the defense refers to as a "sequestration order" was the military judge's ruling on the Government's motion for "special procedures" during JK's testimony. Specifically, the defense cites the military judge's denial of the Government's motion requesting a "*support person*" to assist JK during her testimony.

Neither the defense nor the Government formally requested witness sequestration pursuant to MIL. R. EVID. 615. The Government's motion for "special procedures" requested that an unnamed "trusted adult" be allowed "to be present during [JK's] testimony and, if the child wishes, that the child be allowed to sit next to the adult while providing testimony." Appellate Exhibit XXXI at 4. Suggesting that it was "likely" that one of the parents would be selected as the support person, the Government argued that MIL. R. EVID. 615 should not be construed to bar JK's parents from the courtroom. *Id.* However, the defense did not respond to this motion in writing, and the discussion of this issue on the record focused solely on the idea of having a parent, "seated right beside her," or "in the near vicinity of the witness box[.]" Record at 127, 155. If the military judge's order not to allow the Government to have a "support person" seated either beside or near JK as she testified was also intended to bar the parents from the courtroom, it was never so stated. Further, during discussion of the allegedly improper actions by Govern-

ment counsel on the record, neither counsel nor the military judge ever referred to such an order.

Since the record contains no clear sequestration order, we are confident that the trial counsel did not intentionally violate one. At most, such an order could be implied from the military judge's decision not to allow a support person in the near vicinity of the witness box. But such an implied order could not reasonably be construed to prohibit contact between the trial counsel and Government witnesses, or between witnesses **outside** the courtroom. As previously noted, MIL. R. EVID. 615 deals only with the presence of prospective witnesses in the courtroom. Thus, any order regulating witness contact outside the courtroom must depend on a specific use of the military judge's discretionary powers, either to enforce the broader purposes of MIL. R. EVID. 615, or to control the mode and order of testimony pursuant to MIL. R. EVID. 611.

■ We also find that the trial counsel did not improperly coach JK by discussing her testimony with her during the recess. Without an explicit instruction from the military judge, the trial counsel were not prohibited either by MIL. R. EVID. 615 or case law from discussing the child's testimony with her during the recess. Moreover, the record indicates that, at most, the trial counsel only encouraged JK to testify to the whole truth rather than a part of it. This is no more than witnesses are routinely required to swear to before giving in-court testimony. R.C.M. 807(b)(2), Discussion.

■ We find nothing in the record to suggest that the parents sought to persuade JK to falsify her testimony, or that they sought to tailor her testimony to their own. Both had already testified and had been barred by the hearsay rule from testifying to the substance of her allegations. Rather, like the trial counsel, they essentially encouraged their daughter to tell the whole truth. Thus, in the absence of specific orders to the contrary, the trial counsel violated no legal standard by allowing the parents and their six-year-old child to reunite in the trial counsel's office. Nor was it prosecutorial misconduct, under these facts, for the trial counsel to

allow the child's parents to admonish her to tell the whole truth while testifying.

We note that, in our view, it is appropriate and reasonable for a young child witness to remain in the company of parents or care providers while awaiting trial participation. If either party has a concern regarding witness collusion in these situations, they have the opportunity to seek an order from the military judge to regulate contact between such witnesses. The military judge has inherent power under both Mɪʟ. R. Evɪᴅ. 611 and 615 to regulate contact between witnesses outside the courtroom, either at the request of counsel or acting *sua sponte*. Under the facts of this case, however, this inherent, discretionary power was not invoked by counsels' request. Further, we find no duty on the part of the military judge to separate JK from her parents during the recess by giving a sequestration order *sua sponte*. See *Sepulveda*, 15 F.3d at 1176.

We have considered the appellant's contention that the trial counsel and assistant trial counsel were not candid with the military judge about the content of their discussions with JK during the recess, and find no merit in it. We view the differences in the trial counsels' proffers on the record, before and after the defense voir dired JK on these events, as reasonably consistent and not indicative of an intent to mislead the military judge. Their first proffer was more general, and the second more specific, simply because the defense's allegations were more clearly understood by the time of the second proffer and because the military judge requested greater detail. The military judge stated that he did not doubt the accuracy of the trial counsel's proffers, and neither do we. Record at 576.

Assuming *arguendo* there was a violation of a sequestration order in this case, the military judge appropriately addressed any concerns of improper influence by specifically authorizing the defense to cross-examine JK in front of the members on anything that transpired during the recess. This is the second of the three time-honored methods listed in *Roth* for curing a violation of a sequestration order. 52 M.J. at 190. More importantly, the defense's cross-examination of JK on this matter ensured the members could judge the credibility and weight of JK's testimony with full regard for any prompting by her parents or the trial counsel. We conclude that the military judge did not abuse his discretion in addressing any sequestration implications of his ruling on the Government's motion for special procedures.

Finally, even if we were to find prosecutorial misconduct, which we do not, we would have to determine whether the error impacted a substantial right of the appellant and, if so, whether the violation was harmless under all the circumstances. *Meek*, 44 M.J. at 5. Possible methods of assisting the child to give complete testimony in this situation included giving the prosecution more leeway to develop her testimony on direct examination with leading questions, allowing trial counsel a recess to give the child time to relax and to ask the child whether she had told the whole truth, or allowing the Government to impeach the witness with prior inconsistent statements. The Government requested the third option, an opportunity to impeach JK with her prior inconsistent statements. This is any party's right under Mɪʟ. R. Evɪᴅ. 607. Thus, even had JK's parents not admonished her to tell "the whole story," the members would likely have had the opportunity to hear JK's responses to Government questions about her earlier allegations, and would thus have been informed of her additional allegations in either case. Consequently, any technical violation was harmless under all the circumstances presented.

### Conclusion

We have considered the appellant's remaining assignments of error [1] and find them to be without merit. We therefore affirm the

1. The appellant alleges that: the military judge erred in admitting inadmissible hearsay statements and in granting the Government's challenge for cause against a court member; the charges were unreasonably multiplied; the staff judge advocate forwarded "new matter" to the convening authority without notifying the defense; and the appellant was denied his post-trial rights because he did not receive a copy of the record of trial from his defense counsel until after the convening authority's action.

findings and sentence as approved by the convening authority.

Senior Judge CARVER and Judge WAGNER concur.