# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40048**

————————————

**UNITED STATES**
*Appellee*

**v.**

**John C. ZAPATA**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 October 2022

————————————

*Military Judge:* Rebecca E. Schmidt.

*Sentence:* Sentence adjudged 10 October 2020 by GCM convened at Davis-Monthan Air Force Base, Arizona. Sentence entered by military judge on 10 November 2020: Bad-conduct discharge, confinement for 14 months, and reduction to E-1.

*For Appellant:* Major Sara J. Hickmon, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Amanda L.K. Linares, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Morgan R. Christie, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges*.

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge KEY and Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MEGINLEY, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement, of two specifications of assault consummated by battery, and two specifications of assault consummated by battery on divers occasions, all in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1] Appellant was sentenced to a bad-conduct discharge, confinement for 14 months, and reduction to the grade of E-1. The convening authority approved the sentence in its entirety.

Appellant raises four assignments of error on appeal: (1) whether the military judge abused her discretion in admitting previously excluded portions of a victim's unsworn statement as a prosecution exhibit; (2) whether the record of trial is substantially complete; (3) whether trial defense counsel were ineffective; and (4) whether Appellant's sentence is inappropriately severe. We have carefully considered issue (2), and the portion of issue (3) that pertains to issue (2), and determined these issues are without merit and warrant no relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). In addition, the court considers the issue of timely appellate review.

We find no error that materially prejudiced a substantial right of Appellant and affirm the findings and sentence.

## I. BACKGROUND

Appellant entered active duty service in February 2006 as a member of the United States Navy. He completed two terms of enlistment, serving a total of eight years in the Navy, and then entered the Individual Ready Reserve. In December 2013, Appellant enlisted in the United States Air Force Reserve and was assigned to Travis Air Force Base, California. In October 2015, he became a member of the Arizona Air National Guard. Appellant was on Title 10 orders during the timeframe of the allegations.

There are two victims in this case: Appellant's ex-wife, AM, and his former intimate partner, MB. Originally, two specifications of sexual assault against MB and two specifications of sexual assault against AM were referred against

---

[1] All references in this opinion to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). The charge and specifications were referred to trial after 1 January 2019; accordingly, all other references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). *See* Exec. Order 13,825, §§ 3, 5, 83 Fed. Reg. 9889, 9889–90 (8 Mar. 2018). As discussed later in this opinion, pursuant to the pretrial agreement, numerous other specifications were dismissed with prejudice.

Appellant, all alleged violations of Article 120, UCMJ, 10 U.S.C. § 920. A single specification of assault consummated by battery against AM was also referred against Appellant. On 9 October 2020, the day before Appellant's court-martial, pursuant to pretrial negotiations, an additional charge with four specifications of assault consummated by battery (two specifications each against AM and MB), in violation of Article 128, UCMJ, were preferred and referred against Appellant; the charge and its specifications were served on Appellant the day of his court-martial.

As part of his pretrial agreement, Appellant waived his right to an Article 32, UCMJ, 10 U.S.C. § 832, preliminary hearing, and waived the five-day statutory waiting period between the referral of the additional charge and its specifications and arraignment, under Article 35(b)(1)(A), UCMJ, 10 U.S.C. § 835(b)(1)(A). In return for pleading guilty to the additional charge and its specifications, the convening authority committed to withdrawing the original charges and specifications once the military judge accepted Appellant's guilty pleas. The convening authority further committed to dismiss the withdrawn charges with prejudice after Appellant's sentence was announced.

Also, in accordance with the pretrial agreement, Appellant entered into a stipulation of fact. The information provided in the stipulation of fact and in Appellant's providence inquiry forms the basis for the following factual background.

## A. Victim AM

Appellant met AM while serving in the Navy on the USS NASSAU in Norfolk, Virginia. The two were married in August 2008 and divorced in February 2017. According to the stipulation of fact, throughout the latter half of their marriage, Appellant and AM "had a contentious relationship." During his providence inquiry, Appellant added that he and AM would "argue frequently" and Appellant "would sometimes stay away from the house." Additionally, Appellant admitted during his providence inquiry that between 5 January 2016 to 30 April 2016, and between 3 July 2016 to 31 October 2016, on divers occasions, he touched AM's "breasts, buttocks, and vaginal area over the clothing with [his] hand." Appellant stipulated that AM would tell Appellant "no" or "get off," or she "would swat his hand away" when he touched her. Appellant told the military judge these acts happened "several times a week," and that when he touched AM in this manner he was either "trying to be funny" or "trying to initiate sex." Appellant acknowledged his touching of AM was offensive and unwanted.

## B. Victim MB

Appellant met MB in February 2016 in Tucson, Arizona. They dated for two months, then later became friends. While dating, and afterward when they

were just friends, Appellant and MB engaged in consensual sex on numerous occasions. However, at times, MB "experienced pain while having vaginal intercourse with [Appellant]. When this occurred, [MB] would inform [Appellant], and the pair would change positions, slow down, or use lubrication." In September 2016, although they were not dating, Appellant "began sleeping" at MB's apartment.

One night in January 2017, Appellant and MB went out in downtown Tucson. After returning to MB's apartment, they engaged in consensual sex. Soon after they began to have sex, MB informed Appellant that she was experiencing some pain, so they switched positions. After switching positions, MB again began to experience pain and asked Appellant to stop. Appellant stipulated that he "did not immediately remove his penis from her vagina." Appellant further stipulated that MB "essentially" stated the following to agents from the Air Force Office of Special Investigations (AFOSI):

> [MB] asked [Appellant] to stop five to six times, and he did not stop. She began to cry because [Appellant] was getting mad. She tried to pull away from [Appellant] and move closer to the wall. [Appellant] told [MB] he "needed to finish" and it was "uncomfortable" for him not to finish. [MB] told [Appellant] to "take care of himself." [Appellant] got mad. [Appellant] "gave up," stopped having sex with [MB], and went to sleep on the couch in the living room.

During his providence inquiry, Appellant acknowledged that MB told him to stop "because the sex was hurting her," but given that he was "close to climax," he kept his penis inside her vagina and asked her if she could "just power through," or words to that effect. MB told him she wanted to stop having sex. Once MB told him again that she wanted him to stop, Appellant "removed [his] penis from her vagina," "rolled over and passed out," and the two went to sleep in the same bed.

On 18 March 2017, Appellant and MB again went out in downtown Tucson. The two returned to MB's apartment later that evening after consuming alcohol, and upon their return, engaged in consensual sex. Soon after they began, MB again began to feel vaginal discomfort and they switched positions. After continuing for a while, MB told Appellant she was in pain and asked him to stop; Appellant did not immediately remove his penis from her vagina. Much like the previous instance, Appellant stipulated that MB "essentially" stated the following to agents from AFOSI:

> [MB] asked [Appellant] to stop multiple times. [Appellant] was getting angry. He told [MB] she "had to help [him] out" and asked why she could not just "help [him] out before going to bed."

> He kept getting frustrated because he wanted to orgasm. [Appellant] continued to have sex with [MB] until he ejaculated. [Appellant] and [MB] then went to sleep in the same bed.

(Fifth and sixth alterations in original).

In his providence inquiry, Appellant again acknowledged that MB had informed him that the sex was painful and she wanted him to stop. He also confirmed that he did not stop and "kept [his] penis inside her vagina while [he] asked her to keep going until [he] could climax." Although Appellant failed to acknowledge he ejaculated in MB's vagina, he told the military judge, "taking into account [MB]'s statements regarding this incident, *which I have no reason to believe are false*, further solidify my belief that I am guilty of this offense." (Emphasis added). Appellant and MB had consensual sex at least twice after this incident. In May 2017, Appellant and MB "stopped talking and [Appellant] moved out of [MB's] apartment."

As previously mentioned, Appellant was initially charged with two specifications of sexual assault against MB, under Article 120, UCMJ, two specifications of sexual assault against AM, under Article 120, UCMJ, and one specification of assault against AM, under Article 128, UCMJ. As part of the pretrial agreement, these specifications were to be withdrawn and dismissed with prejudice. The newly referred Additional Charge consisted of two specifications alleging Appellant touched MB's vulva "with his body" and two specifications involving Appellant touching AM's breast, buttocks, and vulva with his hand, over her clothes, all charged under Article 128, UCMJ.

## II. DISCUSSION

### A. AM's Victim Impact Statement

#### 1. Additional Background

Appellant argues the military judge abused her discretion in admitting previously excluded portions of AM's unsworn victim's impact statement as a prosecution exhibit. Prior to the military judge's acceptance of AM's written unsworn statement as Court Exhibit B, trial defense counsel objected to portions of AM's unsworn statement on the basis that they contained matters not directly relating to or arising from the offenses of which Appellant had been found guilty. Specifically, trial defense counsel objected to AM's portrayal of Appellant's "abuse" of her "over the course of a decade approximately February 2006 to February 2017;" to her statement that Appellant had constantly "body sham[ed]" her and told her that "[she] and [her] family sucks;" and to AM's use of the phrase "long term" to describe the emotional and physical abuse AM suffered "at the hands of [Appellant]."

Trial defense counsel also objected to Paragraph 3 of Court Exhibit B in its entirety, which reads as follows:

> I would like to add, the events that led up to the night of Oct[ober] 8 into Oct[ober] 9 were as follows: [Appellant] took my phone without my permission and saw text messages between myself and another man. He was already drinking liquor heavily and became very angry. The last thing I remember was him pulling me by the back of my head and dragging me into the house. I woke up several hours later in the morning to a pillow soaked with blood, my hair matted and stuck to the pillow, my eyes hugely swollen and black and a huge open gash down the middle of my forehead. Also, my phone with a hard [phone] cover, was broken on the floor, a big blood stain at the footboard of the bed on the right side, drips of blood leading up to the bed and a broken light bulb in the living room lamp with the shade askew. I felt very dizzy and sick to my stomach as well as frightened to the look of my facial features. I asked him what happened and he said he hit me with my phone, banged my head and punched me several times. He begged me not to go the ER, said he was so sorry and that he loved me and then he applied liquid stitch to my forehead. I did end up going to the ER later on that day and the ER doctor sat directly in front of my face, looked directly into my eyes and asked if someone was harming me. I denied anyone was and said I had fallen. I very much believe he knew to the contrary as a doctor but could not report anything since I denied any abuse.[2]

The military judge agreed with trial defense counsel and sustained his objections. Noting the "particular forum" of a military judge-alone trial, the military judge stated that she would not consider the portions to which she sustained the objection; the Defense did not object.

At the conclusion of the victims' matters, the Defense presented its sentencing case, which included an unsworn statement from Appellant, various awards, and 12 character letters. The Government objected to these exhibits "on the grounds of foundation, authenticity, and hearsay to all." Trial defense counsel then requested the military judge relax the rules of evidence for the

---

[2] The original Charge II and its Specification, which alleged assault consummated by battery against AM, reads as follows: that Appellant, "did, at or near Vail, Arizona, between on or about 8 October 2016 and on or about 9 October 2016, unlawfully strike AM in the face with his hand."

purpose of sentencing; the military judge granted the request, and the exhibits were admitted.

After the Defense rested, trial counsel requested the military judge reconsider her ruling that excluded Paragraph 3 of AM's victim impact statement and asked the military judge to consider that information as rebuttal evidence. Focusing in part on a character letter submitted by Ms. JP, who identified herself as a close family friend, trial counsel argued that the Defense had opened the door to admit Paragraph 3 of AM's victim impact statement as rebuttal evidence. Trial counsel highlighted the following portions of Ms. JP's statement:

> [Appellant] is deeply kind, compassionate, and loving in his treatment and respect for others; especially towards his children, family, and friends.
>
> . . . He displays respect at all times while listening and encouraging other's opinions and input as it pertains to his own self-improvement. [Appellant] has always been open minded but consistently exceeds expectations in his interpersonal skills, problem-solving abilities, and work ethic.

Trial counsel identified a couple of other possible statements that he believed opened the door to rebuttal. Trial counsel also stated there were additional instances of the Defense opening the door, but that "the [G]overnment ha[d] just given the court a sampling."

Defense counsel opposed the Government's oral motion to reconsider, arguing that the Government's rebuttal evidence was not proper rebuttal as it did "not actually rebut[ ] anything that was presented, but [was] just a backdoor attempt to try and introduce what is highly prejudicial information." The Defense further objected that a victim impact statement was not proper rebuttal evidence as it was not evidence at all.

The military judge ultimately determined that the excluded Paragraph 3 of AM's victim impact statement rebutted some portions of Ms. JP's character statement. However, the military judge expressed concern regarding how the Government wanted to introduce the rebuttal evidence, specifically, by making it a separate prosecution exhibit. The military judge then stated, *"United States v. Dunlap*[3] specifically tells me that it is not appropriate to effectively convert a victim impact statement into a prosecution exhibit." Trial counsel then argued that the circumstances of Appellant's case were different from those of the appellant in *Dunlap*, focusing primarily on the entire victim's

---

[3] *United States v. Dunlap*, No. ACM 39567, 2020 CCA LEXIS 148, at *13 (A.F. Ct. Crim. App. 4 May 2020) (unpub. op.).

statement being admitted as a prosecution exhibit in *Dunlap* whereas trial counsel was only offering a single paragraph from a victim unsworn statement. The military judge replied, "And so what is this then, [t]rial [c]ounsel? Is this a court exhibit? Is it a prosecution exhibit?" She explained that the opinion in *Dunlap* held "it was not acceptable to simply put the document in and say portions of it are a court exhibit and portions of it are a prosecution exhibit."

Trial counsel ultimately offered the following:

> To the extent that the court has concerns about [the form of the exhibit], what the [G]overnment would propose . . . is that the [G]overnment take the entirety of [AM's written unsworn statement], [ ] redact everything except the paragraph that's particularly of issue, and the signature. So it would include the paragraph and the signature of [AM], and that would be Prosecution Exhibit 4 for identification. And that we would offer that under the relaxed rules to rebut the statement in Ms. [JP's] statement.

The military judge sustained the Defense's objection to her "consideration of portions of Court Exhibit B . . . on the basis of form and the fact that the court doesn't understand Court Exhibit B to be a document that can be converted or considered for both a dual victim impact statement and prosecution exhibit statement purpose." The military judge then explained that if the Government wished to consider Prosecution Exhibit 4 for Identification as potential rebuttal evidence, then the Government would need to produce that document and "address that document separately."

After a short break, trial counsel then offered Prosecution Exhibit 4 for Identification, "under the relaxed rules" as rebuttal evidence. This exhibit consisted of the information contained in Paragraph 3 of Court Exhibit B—that is, the information which the military judge had declined to consider as proper victim impact matters for a victim unsworn statement. The new prosecution exhibit bore AM's signature.[4] Trial defense counsel reiterated his previous objection, and further noted that this was "highly prejudicial" under the Mil. R. Evid. 403 balancing test. In conducting a balancing test under Mil. R. Evid. 403, the military judge overruled the Defense's objection, stating:

> The court finds the probative value of this evidence for rebuttal purpose is appreciable. Evidence that the accused's [sic] his wife with his phone, banged her hand and pushed her several times, strongly refutes the characterization of the accused as an exceptional man of character and a deeply kind, compassionate and

---

[4] Comparing AM's original signature on Court Exhibit B to her signature on Prosecution Exhibit 4, it appears to the court that AM signed both documents separately.

loving person in his treatment and respect for others, especially his family. The court finds that the danger of unfair prejudice and confusion of the issues is low. The court intends to consider this evidence only for the narrow purpose of rebutting the evidence presented by the [D]efense; again, the two specific statements by Ms. [JP] in her character letter.

While [Paragraph 3] does describe an additional assault by the accused, the conduct described is not so inflammatory as to be likely to result in a decision on an emotional or otherwise improper basis. The court does not anticipate any difficulty in considering this document solely for the narrow purpose of rebutting Ms. [JP's] letter.

The evidence in this matter is limited to the contents of this paragraph and the rebuttal purpose of the evidence is clear and easily understood. The rules of evidence have been relaxed, and the court does find the evidence sufficiently reliable for the purposes of the [Mil. R. Evid.] 403 balancing. *The court will admit the document and give it the weight, if any, that is warranted.*

(Emphasis added).

On appeal, Appellant argues the military judge abused her discretion by admitting Paragraph 3 of Court Exhibit B as Prosecution Exhibit 4, claiming "the Government adopted the victim's right to be heard as its own and attempted to wedge in the document as rebuttal evidence." Appellant also argues this exhibit failed the Mil. R. Evid. 403 balancing test, asserting "the Government adopted the victim's right of allocution and became the mouthpiece for her words." Thus, Appellant argues the military judge abused her discretion, and Appellant suffered prejudice, when the military judge allowed the Government to convert Paragraph 3 of AM's victim impact statement into Prosecution Exhibit 4.

### 2. Law

"We review a military judge's decision to admit evidence for an abuse of discretion." *United States v. Norwood*, 81 M.J. 12, 17 (C.A.A.F. 2021) (citation omitted). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003) (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000)

9

(quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

Military judges are permitted to relax the rules of evidence with respect to defense matters in extenuation or mitigation; doing so "may include admitting letters, affidavits, certificates of military and civil officers, and other writings of similar *authenticity and reliability*." Rule for Courts-Martial (R.C.M.) 1001(d)(3) (emphasis added); *see also* Mil. R. Evid. 1101(b). When these rules are so relaxed, they may also be relaxed "to the same degree" for evidence offered by the Government in rebuttal. R.C.M. 1001(e). This relaxation of the rules "goes more to the question of whether the evidence is authentic and reliable," and does not convert otherwise inadmissible evidence to admissible evidence. *United States v. Saferite*, 59 M.J. 270, 273 (C.A.A.F. 2004) (quoting *United States v. Boone*, 49 M.J. 187, 198 n.14 (C.A.A.F. 1998)).

In sentencing, except for non-factual matters in the accused's unsworn statement, the "prosecution may rebut matters presented by the defense." *United States v. Bazar*, No. ACM 37548, 2012 CCA LEXIS 242, at *14 (A.F. Ct. Crim. App. 29 Jun. 2012) (unpub. op) (internal quotation marks and citation omitted); *see also* R.C.M. 1001(d)(2)(C); R.C.M. 1001(e). The legal function of rebuttal evidence is to "explain, repel, counteract or disprove the evidence introduced by the opposing party." *Saferite*, 59 M.J. at 274 (quoting *United States v. Banks*, 36 M.J. 150, 166 (C.M.A. 1992)).

"[T]he relevance of the Government's rebuttal evidence must be determined in light of the evidence first introduced and issues initially raised by the defense." *Bazar*, unpub. op. at *15 (alteration in original) (quoting *United States v. Hallum*, 31 M.J. 254, 256 (C.M.A. 1990)). For example, rebuttal evidence may be presented to contradict defense evidence of "particular acts of good conduct or bravery and evidence of the reputation or record of the accused in the service for efficiency, fidelity, subordination, temperance, courage, or any other trait that is desirable in a servicemember." *Id.* (internal quotation marks and citation omitted); *see also* R.C.M. 1001(d)(1)(B). In other words, "[t]he scope of rebuttal is defined by evidence introduced by the other party." *Banks*, 36 M.J. at 166 (citations omitted). When an accused "opens the door, principles of fairness warrant the opportunity for the opposing party to respond, provided the response is fair and is predicated on a proper testimonial foundation." *United States v. Eslinger*, 70 M.J. 193, 198 (C.A.A.F. 2011) (citing *United States v. Blau*, 17 C.M.R. 232, 244 (C.M.A. 1954)) (holding that otherwise "an accused would occupy the unique position of being able to 'parade a series of partisan witnesses before the court' . . . without the slightest apprehension of contradiction or refutation").

Military judges are afforded wide latitude in controlling the presentation of rebuttal evidence. *United States v. Gittens*, 36 M.J. 594, 598 (A.F.C.M.R.

1992). "Rebuttal evidence, like all other evidence, may be excluded pursuant to [Mil. R. Evid.] 403 if its probative value is substantially outweighed by the danger of unfair prejudice." *Saferite*, 59 M.J. at 274 (citing *United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001)). Military judges are afforded broad discretion in applying Mil. R. Evid. 403, but we give less deference to military judges "if they fail to articulate their balancing analysis on the record." *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (quoting *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

Whether an error is harmless is a question of law we review de novo. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017). "When there is error in the admission of sentencing evidence, the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). We consider four factors when determining whether an error had a substantial influence on the sentence: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (quoting *Bowen*, 76 M.J. at 89).

### 3. Analysis

Appellant argues that Paragraph 3 of Court Exhibit B was not proper rebuttal evidence, that the military judge abused her discretion by allowing the Government to convert Paragraph 3 of Court Exhibit B into a prosecution exhibit, and that Appellant suffered prejudice as a result of the military judge's abuse of discretion. This assignment of error can be analyzed in two parts: whether the Government established a sufficient basis for the admission of Prosecution Exhibit 4 during the rebuttal portion of presentencing; and, if not, whether the admission of the exhibit was unduly prejudicial to Appellant.

The facts of this case are somewhat similar to those this court encountered in *Dunlap*, the case specifically cited by the military judge in her ruling on this matter. In *Dunlap*, the victim presented an unsworn statement to the court. Unpub. op. at *5. Trial defense counsel objected to portions of the victim's statement, an objection which was sustained, in part. *Id.* at *4–6. After the appellant presented his sentencing case, the Government sought to admit portions of the victim's unsworn statement that had been previously excluded, arguing these portions of her statement rebutted assertions the appellant had made in his sentencing case. *Id.* at *8. Over defense objection, the military judge in *Dunlap* permitted trial counsel to use some of those requested portions in rebuttal. *Id.* In determining how to submit the formerly excluded statements, the military judge in *Dunlap* stated, "I don't think marking is really going to matter because really the Rules of Evidence are relaxed. I just think it's important

11

to mark for the Appellate record." *Id.* at *9. Trial counsel marked the newly admitted statements as a prosecution exhibit.[5] *Id.*

In *Dunlap*, a panel of this court noted:

> While the Government was permitted to rebut statements of fact contained in [the appellant]'s unsworn statement, the scope of that rebuttal was constrained by the scope of the factual assertions in [the appellant]'s unsworn statement, which [the victim's] statement far eclipsed. Rather than a tailored rebuttal, the Government offered, and the military judge admitted, a wide-ranging unsworn statement from [the victim] as a prosecution exhibit upon the suggestion of the military judge.
>
> . . . R.C.M. 1001A[6] permits a victim to provide information to the court-martial about the impacts they have suffered as a result of an accused's offenses. The admission of [the victim's] entire unsworn statement as a prosecution exhibit, ostensibly in rebuttal to a single point from [the appellant]'s own unsworn statement, was plain error and an abuse of the military judge's discretion.

*Id.* at *28–29. Although this court found error, it concluded the appellant was not prejudiced by this error. *Id.* at *33–34.

*Dunlap* is distinguishable from Appellant's case. Where the military judge in *Dunlap* permitted trial counsel to admit the victim's entire statement as a prosecution exhibit, in Appellant's case the military judge admitted a new prosecution exhibit that contained rebuttal-specific portions of AM's original statement that had been previously excluded. Like *Dunlap*, once Prosecution Exhibit 4 was admitted, it was no longer an unsworn victim impact statement. Because the Defense had been granted relaxation of the rules of evidence, the Government was relieved of its foundational burden and was able to admit the

---

[5] Changes were later made to this exhibit; trial defense counsel did not object to those changes. In its opinion, the court noted:

> Trial counsel then provided the military judge and the court reporter Appellate Exhibit IV and Court Exhibit 1, which the military judge described as the "edited version" of [the victim's] unsworn statement. No court exhibits were included in the record of trial we received, and none are listed in the record's table of contents. [The victim's] written unsworn statement, however, is included as Prosecution Exhibit 19.

*Dunlap*, unpub. op. at *9–10.

[6] 2016 *MCM*. R.C.M. 1001A is now included in R.C.M. 1001 to the 2019 *MCM*.

exhibit into evidence as part of the Government's rebuttal case, which was otherwise not admissible as victim impact.

We find the Government established a sufficient basis for the admission of Prosecution Exhibit 4 during the rebuttal portion of presentencing. Ms. JP's statements sought to portray Appellant as a "deeply kind, compassionate, and loving" person and indicated that he "display[ed] respect at all times." As a result, Appellant opened the door for the Government to contradict Ms. JP's assertions, and AM's claim that Appellant brutally assaulted her rebutted assertions that Appellant was a kind, compassionate, loving, and respectful person. As the United States Supreme Court has explained, "The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." *Michelson v. United States*, 335 U.S. 469, 479 (1948). Although Appellant posits that the Government adopted AM's "right to be heard as its own and attempted to wedge in the document as rebuttal evidence," we know of no rule that prevents a victim from providing both a victim impact statement under R.C.M. 1001(a)(3)(A) and evidence in rebuttal under R.C.M. 1001(e). In this regard, AM certainly could have testified in rebuttal to Ms. JP's assertion that Appellant was kind, compassionate, and respectful; moreover, a document styled as a character letter would also be a permissible means to rebut Ms. JP's assertion under relaxed rules.

 Although we find the Government had established a sufficient foundation to rebut Ms. JP's character letter, we find the military judge abused her discretion in allowing the entirety of Prosecution Exhibit 4. Much like *Dunlap*, while the Government was permitted to rebut statements contained in Ms. JP's character letter, the scope of that rebuttal was constrained by the scope of the factual assertions in Ms. JP's character letter—which Prosecution Exhibit 4 eclipsed. We specifically find the latter portion of Prosecution Exhibit 4, where AM described her interaction with the emergency room doctor, went beyond the scope of rebuttal.[7] While AM's description of Appellant assaulting her squarely rebuts Appellant's attempt to portray himself as "deeply kind, compassionate, and loving in his treatment and respect for others," the fact AM denied being abused to a doctor does not shed any light on that point.

Having determined the military judge abused her discretion in admitting the portion of Prosecution Exhibit 4 that discussed AM's interaction in the emergency room, we assess the impact of this error on Appellant's sentence by

---

[7] We specifically find issue with the following statement: "[T]he ER doctor sat directly in front of my face, looked directly into my eyes and asked if someone was harming me. I denied anyone was and said I had fallen. I very much believe he knew to the contrary as a doctor but could not report anything since I denied any abuse."

determining—utilizing the four *Barker* factors described above—whether the errors "substantially influenced the adjudged sentence." *Barker*, 77 M.J. at 384 (citation omitted). First, the Government's case against Appellant was strong. Appellant was charged with, and pleaded guilty to, significant offenses against two intimate partners. Contrary to Appellant's claim that these were "relatively minor assault offenses," we disagree with this assertion. The primary evidence against Appellant was his agreed-upon stipulation of fact, outlining the details of his repeated assaults against AM on her breasts, buttocks, and vulva, and his assaults against MB while they engaged in sexual activity.

Conversely, the court acknowledges Appellant presented an above-average case in extenuation and mitigation. Appellant submitted 12 character letters, received numerous awards and decorations, served overseas during his two enlistments in the Navy, and received respectable ratings on his performance reports. However, upon our review of the record, Appellant's service record and sentencing matters do not outweigh the aggravating evidence in this case.

Under the third and fourth factors, the materiality and quality of the evidence in question, we recognize the admission of Prosecution Exhibit 4 legitimately raises the question of how much of Appellant's sentence was attributed to the uncharged misconduct alleged therein, as opposed to the actual offenses to which he was found guilty. Nonetheless, considering only the part in error, and in conducting our de novo review, we conclude the military judge did exactly what she said she would do, in that she advised the parties she would consider Prosecution Exhibit 4 "only for the narrow purpose of rebutting the evidence presented by the [D]efense," and that she would give the rebuttal evidence "the weight, if any that is warranted." Also, reviewing trial counsel's sentencing argument, counsel did not reference Prosecution Exhibit 4 or the information contained within. Therefore, we find these factors weigh in the Government's favor.

Furthermore, because this was a court-martial by military judge alone, the potential for unfair prejudice was substantially less than it would be in a trial with members. We are satisfied that the military judge was able to sort through the evidence, weigh it, and give it the appropriate weight it warranted. Therefore, we find Appellant's sentence was not substantially influenced by this error, nor was there material prejudice to Appellant's substantial rights.

## B. Ineffective Assistance of Counsel

### 1. Additional Background

Appellant argues that trial defense counsel were ineffective for two reasons: (1) they failed to object to portions of MB's victim impact statement, and (2) they failed to submit clemency matters pursuant to R.C.M. 1106. On the

matter of clemency, we have determined this issue is without merit and warrants no relief. *See Matias*, 25 M.J. at 361.[8]

With respect to MB's victim impact statement, after the Government presented its sentencing case, MB read her unsworn statement to the court, saying, in part, that Appellant "lied about being married," that he "[took] advantage of [her] twice," and that she "[would] always have to live with the effects of him sexually assaulting [her]." MB made these statements after the sexual assault specifications were withdrawn and dismissed with prejudice. Trial defense counsel did not object to MB's written or oral unsworn statements.

Appellant argues that during presentencing, both MB's oral and written statements—which included references to Appellant sexually assaulting her and a claim that Appellant "lied about being married" when she was with him—were admitted without objection from trial defense counsel.[9] Appellant argues he was prejudiced by trial defense counsel's failure to object, in that

---

[8] Appellant states that when notified of his right to submit matters, "he specifically indicated that he did not waive his rights and he would be submitting clemency matters to the convening authority." Appellant then argues the record is not substantially complete, in that a clemency submission is "nowhere within the record of trial." However, the record contains a 21 October 2020 submission to the convening authority by trial defense counsel. In that submission, trial defense counsel requested the convening authority defer Appellant's rank reduction and automatic forfeitures; trial defense counsel also requested a waiver of automatic forfeitures for the benefit of Appellant's dependent children. This submission also included a handwritten letter by Appellant to the convening authority, requesting "consideration [for] a reduced sentence." In their request, trial defense counsel stated, "[A]lthough a deferment and waiver request is considered a clemency request, [Appellant] expressly reserves the right to submit further clemency matters."

In response to Appellant's ineffective assistance of counsel claims, we ordered trial defense counsel to provide declarations on this matter. *See United States v. Jessie*, 79 M.J. 437, 442–44 (C.A.A.F. 2020) (observing a Court of Criminal Appeals is allowed to accept affidavits "when necessary for resolving claims of ineffective assistance of trial defense counsel"). Our consideration is limited to determining whether a factfinding hearing or other appellate relief is warranted. *United States v. Ginn*, 47 M.J. 236, 238 (C.A.A.F. 1997) (citations omitted). In a declaration responsive to our order, trial defense counsel stated the 21 October 2020 submission was Appellant's only request, and that based on their advice, Appellant did not seek additional clemency. Having considered the declarations to resolve Appellant's claim, we find the record is substantially complete, as counsel did submit clemency matters on Appellant's behalf and no additional matters were submitted for the convening authority to consider.

[9] In her unsworn statement, MB wrote, "I first met [Appellant] almost four years ago. He lied about being married at the time, but that is a minor detail compared to everything else he has done."

15

they allowed "uncharged misconduct that was not related to the charged offenses in the victim impact statements." Appellant believes there "was no strategic reason that defense counsel would not object to these matters contained in MB's statement." Appellant claims trial defense counsel's failure "freely permitted the military judge to consider these statements and affected her view of the charged offenses as well as [Appellant] as a whole." Finally, Appellant believes there was a reasonable probability that but for this error, he would have received a "more favorable outcome as to sentence."

**2. Law**

The Sixth Amendment[10] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). "[O]ur scrutiny of a trial defense counsel's performance is 'highly deferential,' and we make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time.'" *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (omission in original) (quoting *Strickland*, 466 U.S. at 689).

We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *Mazza*, 67 M.J. at 475 (citation omitted). "Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citations omitted). The burden is on the appellant to demonstrate both deficient performance and prejudice. *Id.* (citation omitted).

We consider the following questions to determine whether the presumption of competence has been overcome: (1) if the appellant's allegations are true, is there a reasonable explanation for counsel's actions; (2) if the appellant's allegations are true, did defense counsel's level of advocacy fall measurably below the performance ordinarily expected of fallible lawyers; and (3) if defense counsel was ineffective, is there a reasonable probability that, absent the errors, there would have been a different result. *Gooch*, 69 M.J. at 362 (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). Regarding the last question,

---

[10] U.S. CONST. amend. VI.

"[i]t is not enough to show that the errors had some conceivable effect on the outcome;" instead, there must be a "probability sufficient to undermine confidence in the outcome," including "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Datavs*, 71 M.J. at 424 (internal quotation marks and citations omitted).

### 3. Analysis

In response to Appellant's assignment of error, we ordered and received declarations from both trial defense counsel. Considering these declarations, along with the assertions Appellant makes in his assignment of error, we conclude that Appellant has not overcome the presumption of competence of his trial defense counsel.

Prior to his negotiated pretrial agreement, Appellant faced four specifications of sexual assault, specifically two specifications each of sexual assault against MB and AM. However, on 9 October 2020, the day before Appellant's court-martial, the convening authority agreed to withdraw all specifications of sexual assault, and a separate specification of assault consummated by a battery, upon announcement of sentence, in return for Appellant's pleas of guilty to the additional charge and specifications as discussed above. On the record, the military judge stated that the "[D]efense's proposed [pretrial agreement] had been coordinated with both of the named victims, and that there was potentially some support for the agreement."

In his declaration, trial defense counsel, Major (Maj) GJ, noted that he received an advance copy of MB's written statement from her special victim's counsel (SVC) and returned the statement with "highlighted objections and comments detailing the objections." Maj GJ provided those objections as part of his declaration. Maj GJ did not deem the reference to Appellant's "[lying] about being married" as objectionable; however, he did identify references to sexual assault as objectionable "and included it in [his] review of the unsworn statement returned to MB's counsel." Maj GJ recalled that when he discussed the matter with MB's counsel, "it was [the SVC's] position that verbiage was so important to [MB] to the point where removal of the wording could cause her to pull her support of the plea agreement." Maj GJ "decided it was in [Appellant's] best interest to get the benefit of the pretrial agreement, as that was his stated desired outcome." Maj GJ weighed several factors, including,

> the severity of the original charges, the fact [he] believed the risk of conviction for the MB offenses was very high, and the severity of the impact upon [Appellant's] life afterwards should he be convicted of the original charges (to include a possible lengthy prison sentence, likely sex offender registry, and a mandatory dishonorable discharge).

Accordingly, Maj GJ "deemed the impact of MB's inaccurate characterization of the offenses as sexual assault in her unsworn statement to be negligible," and that a "seasoned military judge, who we presumed would know and follow the law, would not be swayed in any way by the unartful characterization of the offenses as sexual assault." Ultimately, he believed "[i]t was clearly in [Appellant's] best interest to allow the inaccurate characterization of the offenses into the unsworn [statement] without objection rather than to risk the extremely beneficial plea deal falling apart after MB withdrew her support." Maj FC, Appellant's other trial defense counsel, also provided a declaration that was consistent with Maj GJ's declaration.

We evaluate trial defense counsel's performance not by the success of their strategy, "but rather whether counsel made . . . objectively reasonable choice[s] in strategy from the alternatives available at the [trial]." *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (quoting *United States v. Hughes*, 48 M.J. 700, 718 (A.F. Ct. Crim. App. 1998)). In this instance, the record shows trial defense counsel made strategic decisions that were objectively reasonable, particularly given the amount of confinement Appellant could have received had he litigated, and been found guilty of, specifications alleging sexual assault, and the collateral consequences that would have followed such convictions. The record shows trial defense counsel zealously and vigorously defended their client at each stage of the proceedings. We find trial defense counsel's actions were reasonable, their performance was not measurably below professional standards, and Appellant has failed to establish that relief is warranted in his case under the theory of ineffective assistance of counsel. Accordingly, we need not reach the question of whether there was a reasonable probability of a different result.

However, even assuming trial defense counsel were ineffective on this point, we would conclude there is no reasonable probability there would have been a different result absent the error. Appellant pleaded guilty to assaulting MB by touching her vulva with his body on two separate occasions. Under R.C.M. 1001(c), MB was permitted to make an unsworn statement to the court-martial about those offenses. While the terms "assault" and "sexual assault" may have precise legal definitions, we would not expect lay witnesses to be versed in that precision. Given that the assault in this case involved an assault on MB's sexual organ—indeed, while she and Appellant were engaged in sexual intercourse—the fact she characterized the offense as a sexual assault as opposed to an assault consummated by a battery is wholly unsurprising. Military judges are well versed in placing trial participants' words in context, and no persuasive argument can be made that the military judge in this case would have sentenced Appellant differently had MB been more precise in naming the offense at hand. This is especially the case here, where Appellant had been charged with sexual assault but pleaded to lesser offenses as part of his pretrial

negotiations—a fact known to the military judge. We similarly perceive no realistic chance that Appellant's sentence was impacted by MB's assertion that Appellant lied about being married when he first met MB. Assuming this claim is true, such conduct pales in comparison to Appellant's charged offenses, and MB told the military judge as much when she said the lie "is a minor detail compared to everything else [Appellant] has done." Therefore, even if trial defense counsel were ineffective in not objecting to these matters in MB's statement, Appellant did not suffer prejudice.

## C. Sentence Appropriateness

### 1. Additional Background

Appellant argues his sentence to a bad-conduct discharge, 14 months' confinement, and reduction to the grade of E-1 is inappropriately severe for several reasons, including: (1) that he "served his country with pride for over [nine] years;" (2) that "[h]e also served his community as a firefighter, responding not only to fires, but to life-threatening events day in and day out for [six] years;" (3) that he "took this first step toward rehabilitation when he pleaded guilty to his offenses and expressed remorse" to MB and AM; (4) that "the Government was saved the time and expense of a litigated trial, and did not have the burden of proving beyond a reasonable doubt that [Appellant] committed the charged offenses;" and (5) that he "presented compelling sentencing evidence." Appellant does not believe he received "appropriate credit for his acceptance of responsibility, his remorse, and his excellent rehabilitative potential."

### 2. Law and Analysis

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). Our authority to determine sentence appropriateness, "which reflects the unique history and attributes of the military justice system, includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

The court acknowledges that based on his sentencing evidence, it appears Appellant had a respectable career. However, we cannot overlook the numerous and repeated assaults Appellant committed against his now ex-wife and a former intimate partner. Appellant's argument and analysis on appeal is similar to his unsworn statements and the matters he provided during sentencing and clemency. To the extent Appellant's recitation of these prior arguments amounts to another attempt at clemency, such matters are outside the authorized function of this court. *See Nerad*, 69 M.J. at 146. Furthermore, Appellant faced up to 24 months in confinement, and although trial counsel argued for the maximum amount of confinement Appellant could receive, Appellant was only adjudged 14 months' confinement for his crimes. Having reviewed the record, we are confident the military judge gave Appellant's mitigation and extenuation matters the due consideration they warranted. And "[w]hile these matters are appropriate considerations in clemency, they do not show [Appellant]'s sentence is inappropriately severe." *See United States v. Aguilar*, 70 M.J. 563, 567 (A.F. Ct. Crim. App. 2011). Having considered Appellant, the nature and seriousness of his convicted offenses, and all matters contained in the record of trial, to include all matters Appellant submitted in his case in extenuation, mitigation, and clemency, we conclude the approved sentence, including a bad-conduct discharge, is not inappropriately severe.

## D. Timeliness of Appellate Review

### 1. Law

Whether an appellant has been deprived of his due process right to speedy post-trial and appellate review, and whether constitutional error is harmless beyond a reasonable doubt, are questions of law we review de novo. *United States v. Arriaga*, 70 M.J. 51, 55–56 (C.A.A.F. 2011) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)).

A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed. *Moreno*, 63 M.J. at 142. If there is a *Moreno*-based presumption of unreasonable delay or an otherwise facially unreasonable delay, we examine the matter under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). In *Moreno*, the United States Court of Appeals for the Armed Forces identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of a convicted person's grounds for appeal and ability to present a defense at a rehearing. *Id.* at 138–39 (citations omitted).

"We analyze each factor and make a determination as to whether that factor favors the Government or the appellant." *Id.* at 136 (citation omitted). Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.* (citing *Barker*, 407 U.S. at 533). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citation omitted). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Recognizing our authority under Article 66(d), UCMJ, we also consider if relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002).

### 2. Analysis

Appellant's case was docketed with the court on 11 March 2021. The overall delay in failing to render this decision within 18 months is facially unreasonable. *See Moreno*, 63 M.J. at 142. However, we determine no violation of Appellant's right to due process and a speedy appellate review. Appellant's brief was originally due to the court on 10 May 2021. However, he requested and received 11 enlargements of time, and ultimately submitted his assignments of error brief on 5 May 2022—almost 14 months after his case was docketed with the court. The Government filed its answer on 7 July 2022. We are issuing this decision approximately three months after the Government filed its answer, and approximately one month after the 18-month threshold for a facially unreasonable delay.

Analyzing the *Barker* factors, we find the delay is not excessively long under the circumstances. As noted, Appellant received 11 enlargements of time before submitting his brief. Moreover, Appellant has not asserted his right to speedy appellate review or pointed to any particular prejudice resulting from the presumptively unreasonable delay, and we find none. Finding no *Barker* prejudice, we also find the delay is not so egregious that it "adversely affect[s] the public's perception of the fairness and integrity of the military justice system." *See Toohey*, 63 M.J. at 362. As a result, there is no due process violation.

In addition, we determine that Appellant is not due relief even in the absence of a due process violation. *See Tardif*, 57 M.J. at 225. Applying the factors articulated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we find the delay in appellate review justified and relief unwarranted.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court